## Case No. 3,279.

### COUNCER v. The A. L. GRIFFIN.

[5 Am. Law Reg. (N. S.) 45.]

District Court, N. D. New York. Aug. Term, 1865.

MASTER'S REPORT—"GOLD OR CANADIAN CURRENCY."

A libel for the loss of a vessel on the Canadian shore of Niagara river, having been referred to a master, he reported that at the time of the loss the vessel was worth a certain sum of "dollars in gold, or Canadian currency," and that gold or Canadian currency was, at such time, at a premium of forty-nine per cent. over United States legal-tender notes. *Held*, that the value being reported at a certain sum in foreign currency, the damages were to be estimated at the value of that sum in United States notes, and the use of the word "gold" in connection with Canadian currency did not require any different rule than would have been applied had the value been stated in the foreign currency only.

[Disapproved in The Blohm, Case No. 1,556.]

In admiralty. This suit was brought [by Richard Wells Councer against the steam-tug A. L. Griffin] to recover the damages sustained by the libellant in the loss of the scow Andrew Murray, on the Niagara river, at the mouth of Chippewa creek, in Canada West, on the 14th day of December, 1863. After the hearing, upon pleadings and proofs, an interlocutory decree was made, referring it to a commissioner "to take the necessary proofs, and report the amount of damage which the libellant had sustained by reason of the loss of his scow," &c. In pursuance of such decree of reference, the commissioner reported "that on the 14th day of December, 1863,— on which day the said scow Andrew Murray was lost,—she, the said scow Andrew Murray, was worth, including equipments, at Chippewa, the sum of nine hundred and fifty dollars in gold, or Canadian currency, and that the interest on nine hundred and fifty dollars from the 14th day of December, 1863, to and including the date of this report, is the sum of forty dollars and fifty-three cents," and also "that on the 14th day of December, 1863, gold, or Canadian currency, was at a premium in the city of Buffalo of forty-nine per cent. over United States legal-tender notes." The commissioner's report was

dated on the 24th day of July last. Upon the coming in of this report, it was insisted by the counsel for the libellant that, in estimating the damages of the libellant, the forty-nine per cent. reported by the commissioner as the difference between Canadian currency and United States legal tender notes should be added to the value of the property lost, and the interest on that value as reported by the commissioner; while the counsel for the respondent insisted that, by the act of congress, the dollar of the U. S. legal tender note was in law the exact equivalent of the gold dollar, and that therefore the premium reported and claimed could not be allowed.

G. B. Hibbard, for libellant.

A. P. Nichols, for respondent.

HALL, District Judge. The commissioner has reported the value of the property lost, and not the amount of the libellant's damages; and the value thus reported he states to be the value in Canadian currency or gold, at the time and place of the loss,—that is, at the mouth of Chippewa creek, in Canada, in, December, 1863. The report also shows, or rather assumes, that Canadian currency and gold were of equal value; and states that both then bore a premium of 49 per cent. in this city. The report shows in substance that the value of the scow, at the time and place of the loss, was $950, in the currency of Canada, and that the dollar of Canadian currency was then worth $1.49 in the currency which then was and now is the universal if not the legal standard of value in the United States. Whether this currency is or is not the present legal standard of value it is not necessary now to inquire, for the counsel for the libellant and the counsel for the respondent alike assumed, as the basis of their respective arguments, that the decree in this case might be legally paid in the United States legal-tender notes, and that the libellant could not require its payment in the gold and silver coins which formerly constituted the only legal-tender money of the United States. "Consensus facit legem." Assuming, then, that the decree in this case may be discharged by the actual offer, in proper form, of United States legal-tender notes in payment, the question is how, upon the commissioner's report, the damages of the libellant are to be .computed? In thus stating the question I intend to avoid the discussion, in detail, of the several exceptions taken to the commissioner's report, for such exceptions relate, in form at least, to that portion of the report which states the value of the libellant's scow at the time and place of loss, and not to the fact that the commissioner has not reported, in direct terms, the amount of the libellant's damages. The report does not state the actual damages of the libellant, but simply furnishes the data upon which those damages can be computed, according to the

rule of damages or computation which may be adopted by the court. It assumes that the proper measure of damages for the loss referred to is the actual value of the property lost at the time and place of the loss, with legal interest, and then states that value in Canadian currency, and computes interest thereon. The use of the word "gold" in connection with "Canadian currency," although the American gold dollar may in fact have been in the contemplation of the commissioner, does not require that any effect should be given to the report which would not have been required if the value had been stated in "Canadian currency" only. Canadian currency is a foreign currency; and though the Canadians use the term "dollar" as the designation of the unit of their currency, as we do in reference to our own currency, it does not legally or necessarily follow that their dollar is the equivalent of ours. In fact the report shows that one hundred dollars of their currency was, at the time of the loss, of the value of one hundred and forty-nine dollars of ours; and therefore, to indemnify the libellant for his loss by a payment in our currency, it is necessary to give him one hundred and forty-nine dollars of such currency for every one hundred dollars of the value of his property estimated in the currency of Canada.

Much of the appearance of difficulty, which at the hearing cast doubt upon this question, is undoubtedly due to the fact that the currency of Canada, like that of the United States, is a decimal currency, with the dollar as a unit; and that the coined dollar of the two governments is supposed to be of equal value. Whether it is so or not is not a question of law, but of fact, and the question under consideration must be decided upon the principles which would have governed it if the loss had occurred in Bordeaux or Odessa, and the value of the property lost, at the time and place of loss, had been reported in francs or rubles. That the loss occurred within a mile of the line dividing the United States and Canada, and that values are expressed in dollars and cents there as well as here, can make no difference in the principles of law applicable to the case; and, if we look at the equities of the case, it must be apparent that the legal rule is the equitable one. If the loss had occurred at Schlosser, instead of at Chippewa, on the opposite shore, the damages to be recovered would have been determined by the value of the scow and her equipments at Schlosser, in the currency of the United States; and certainly there can be no equity in adopting a different rule, and taking from the libellant nearly one-third the sum necessary to be paid for his actual indemnity, simply because the loss occurred near the opposite side of the river. If the loss had occurred in Russia, and the proof had shown the value of the property in rubles, at the time and place of the loss, it would hardly have been claimed, against the general current of authority, that the libellant would not be entitled to a decree for the actual value here, in the existing American currency, of the number of rubles which his vessel was worth in Russia, and the amount of damages in this case must be computed upon the same principles. Story, Confl. Laws, §§ 307, 314; Story, Prom. Notes, § 390, note 1; Pars. Bills & N. 648.[1] A decree in accordance with this opinion will be entered.

Affirmed by Mr. Justice Nelson, on appeal, August, 1865. [Case unreported.]

---

[1] See the case of The Rochambeau [Case No. 11,973], in which Judge Ware, of the district court of Maine, held that a seaman shipped on board of an American ship at St. John's, New Brunswick, for a voyage to London and back, and afterwards serving on board under such contract, might recover, in the United States, double his stipulated wages; gold then being at a premium of 100 per cent.

